morning morning mr. Feliz was denied the opportunity to present evidence of the only defense he had to the 2003 passport fraud case the defense was to be one of duress or choice of evils an offer of proof was made to the judge it's one that was made on several different occasions on a motion and a motion to reconsider and to summarize that offer of proof it dealt with an incident that occurred on May the 8th of 2003 this was in the Dominican Republic and mr. Feliz and a friend of his name Cesar were traveling to another town Bajarona in the Dominican Republic and while there Cesar got out of the car went away from where mr. Feliz was staying in the car he heard gunshots it was apparently a robbery attempt Cesar ran back to the car with his gun out firing at the robbers he got in the car and as they left he was shot in the head and killed mr. Feliz got to Santo Domingo that night and he called his family and he explained to them what had happened and he asked his family to call the family of Cesar to explain the facts which they did the next day he called a senator and asked for advice on what to do he initially was in fear of the people who had done the robbery he suggested that he go to the district attorney he did the next day go to the district attorney's office and he explained what had happened that district attorney made a few phone calls and told him at that time that the family of the deceased man were very upset and believe that he had led him to the robbery he was told that the uncle of the deceased was a high-ranking official of police general and the Dominican police force and was out to get him basically at that point mr. Feliz left and went to the town of Bahi to wait for things to cool off I guess some three months later he called the district attorney again asked about the case and was told it was not safe for him to return home yet and that he could not protect him at which point mr. Feliz left the Dominican Republic and went to Venezuela while in Venezuela on October the 13th his father who had the same name was arrested and charged with the murder of Cesar he later determined his father had been tortured while in custody and eventually his father was released after that his brother came for a visit to his father's house his brother died under suspicious circumstances mr. Feliz believed that he had been killed by the police general or some of his friends he was in Venezuela at this time he was in Venezuela at this time after that he heard word that all of those involved in the robbery had been arrested and died in jail based on that information he decided he should return to the United States he used an identity that he had been using when he was originally in the United States and he went to the embassy and explained that he had lost his birth certificate the false birth certificate and his Massachusetts driver's license and needed a passport to return he was given a temporary passport after there verification the verification included him telling him I owe child support they checked the name what child support they checked the name determined that he did owe child support and talked to the mother of his child he was then given the passport and he returned by way of Miami in Miami it was discovered he was not who he claimed to be at that point seeking to remain to see his family not to return to where he felt in danger he gave another name and another story his name was Juan Antonio Rodriguez Rodriguez from Venezuela and that he had some fear of the Chavez government there he was then released and held was held briefly for a determination of whether he might qualify for amnesty but he was released he returned to Massachusetts and began again living with the mother of his child and it was several years later that he had an altercation with his then wife after they were married at which point he also applied for special immigrant status as an abused spouse and he received that the amnesty petition was denied but he did receive special immigrant status he had been given a social security card he was working and living under the assumed name without being able to present those facts to the jury he wasn't allowed to present any evidence he virtually gave up the only defense that he had to that 2003 passport fraud case the other charges all related to his family but but wouldn't he have to have shown that he had no choice but to use the fraudulent name and make the false statements isn't that the choice that he would have that he would have to persuade the court that that would that that would therefore be relevant well I think he didn't have that choice to begin with that's what I want to hear problem so what we have that choice why evidence wasn't allowed to be presented there were at least four I'm sorry I thought you meant the choice of using his real name oh when he applied for asylum etc he believed that if he used his real name and explained situation he would be returned he didn't want to be returned because of his fear that the he could be reached in Venezuela as easily as he could be in the Dominican Republic by these police officials so that was his fear that was his concern that he could be really reached if he went back to Venezuela as well as if he happened to go back to the Dominican Republic so it was that fear that he was operating under when he gave the new name and identity I think it's important to understand that this man lived in this country since he was 19 years old he's here more than anywhere else it was on a return home that this occurred he was coming back to his family here when he got back part of it was concerned for his family there was a question of the custody of his children his daughter in living with his wife for a while they got into this dispute they separated he was living at that time in Providence working for a jeweler working living with his cousin and going back to visit his daughter this the state was considering taking his daughter away from his mother reached out to him as a had a number of visits and interviews with the DSS the Department of Social Services official who determined that he would be a suitable father to take care of the daughter to receive custody custody was removed from the mother and given to him at which point the Department of Social Services helped through this family reunification program to get him housing in and he did that which is a source of another one of the charge taking the money from public housing for him and his family his family his daughter his children were US citizens testimony of the trial was that they were entitled to this benefit the only person that might not be so it would be proportionally that testimony was given in addition as far as the 2007 passport fraud case which involved his daughter he went to get a passport for his daughter and while there gave the name he had been living under that was the source of one of the charges however the daughter was entitled to a passport testimony was entitled to that passport so his giving this false name did not mean that she was obtaining a passport contrary to the passport laws as the statute required these other charges he is his defense what can I ask you about that the passport as issued in light of his false giving the false name is the passport contrary to the laws the passport for the daughter yeah no it is not so the government's contention that there's a regulation saying that a passport application can't for a child can't include the false name of the parent in your view doesn't invalidate the passport I don't think it does your honor she is entitled to one it might make that particular application suspect have to go through some other channels for her to get a passport but she certainly was entitled to one as a US citizen and the way you're reading the statute is the statute requires when it says contrary issued contrary to the laws you're reading is that that means that the passport is literally invalid that's right and what do you make of the alternative reading which is if there's a regulation saying how a passport can be issued and the way it's issued is contrary to that regulation as seems to be the case here that's sufficient to trigger the statute if it does your honor I don't read the statute that way contrary to the passport laws of the United States is what the statute says so I don't read it quite that way I understand that reading if such are you laws not to include regulations I if it does let me just hold on for a minute if it does include such a regulation his defense to that count also as to the other two counts was his lack of intent and to try to intent as to what intent to get one that would be kind what you mean from intent to commit fraud that's in no way in no way whatsoever in your brief there's this if I'm reading right on this issue you quote the statute and then there's a sentence that say because she was entitled to it it was not contrary to the laws I don't see anything else in the brief arguing this issue beyond that but if I'm hearing you right today you're saying you're making a separate argument that even if the daughter was entitled to it but it was still contrary to the laws because of my reading about the regs he still didn't violate the statute because there was no showing that he had a specific intent to get a passport that was contrary to the the specific intent of passport fraud and obtaining that passport was raised at the trial but I don't see anywhere in your briefing to us where you make that argument it will be at the third argument in my brief your honor the to be precise I can tell you the precise page if you like but basically it's argument number three with regard to all three counts divided into three sections dealing with each of the other counts one of which was the passport fraud count the argument is that when he obtained the passport he was doing it for the benefit of his family it wasn't for his own benefit and use it wasn't an attempt to fraudulently with that sort of intent obtained a passport for some willful and knowing manner in a way that would benefit him or or anyone else and that issue of intent with regard to each of these other three counts that were put against him was very much impacted by the fact that he could never go back and explain the initial entry so I get the argument is he intended he may have made a false statement and it may have been a false statement for the intention of getting a passport but your contention is there's no evidence that he made that false statement with the intention of getting a passport that would be contrary to the laws of the United States that is correct Judge Howard and may it please the court Mark Quinlivan on behalf of the United States if I could begin by I think unpacking the second and the third claim that the defendant has made with respect to count to his claim in terms of whether the law the terms of the law was violated is solely that because the daughter was a United States citizen she was entitled to a passport and his false statement therefore cannot have constituted a violation of the law and so when you say that that's just a reading of how you read his brief and so you say any argument about whether there was a showing of whether he intended to get a passport that was contrary to the laws that's waived with respect to that claim yes I think Judge Barron that there is a separate claim that the failure or the inability to present the or the the defenses of duress and necessity explaining that I think that's the claim that goes to the separate argument that regarding the intent that that's as I'm understanding it because I'm hearing this for the first time if if it is a separate argument with respect to count to then yes it was not raised in the opening brief it is it is and that's because when we read the heading to the this argument and it says I don't know what was in the motion for the judgment of acquittal and whether there's any reference to the construction of intent in that I did not I did not see that there was a general motion for acquittal I think that there was an argument because in the heading to number two it says he was trying to get it for his daughter whose custody was wouldn't break by court decree and she was entitled to it so that's in other words I was trying to get it for my daughter and she was entitled so I was trying to get a lawful passport that's a reading of that heading and then the next part of that heading is and therefore the passport was not obtained for use contrary to the laws in other words my intention of getting the passport was to get a lawful one for my daughter not to get a passport that was contrary to law so as I read that heading he is making the argument about intent what I didn't read the heading that way and I certainly did not read both the text of his argument which is as I read it simply that because she was a United States citizen she was that's certainly a predicate for his intention argument and if indeed that is encompassed I would I would say that it would fail for the same reasons that we set forth in the brief in the sense why is that well because the and I would direct your court's attention to this court's decision in United States versus Salinas and I'll provide that it's 373 that third 161 which makes two points one is that all with respect to the first part of section 1542 all that is required is a false statement made for purpose I'm focused on the second part which is the word intent yes so I understand the argument that willfully and knowingly may not pick it up but it's willfully and knowingly make a false statement with the intent to do what and this is with the intent to intervening yes clause set off by two commas which suggests grammatically you just throw that out so just naturally read it's I made a false statement with the intent to get a passport contrary to the laws well it's and then I take his argument to be you haven't shown that what you've shown is I had the intent of getting a passport regardless of whether that passport was contrary to the law well I don't think that's the correct reading because the statute says with the intent of securing a passport for one's own use or the use of the of another that said a comma that book no there's a comma before right right so that all intervening clauses set up by comments yes and then and then it follows with contrary to the laws regulating issuance of passports or the rules there are so wouldn't grammatically you just if you're trying to read the intent the intent is to obtain a passport contrary to the laws intervening thing such a passport has to be either for your use or for another but that intervening clause doesn't suggest that the contrary to the laws part is irrelevant to the intention well I I think my I read the statute that it does and I would say because the intent is is tied to the securing of a passport for one's own use or the purpose or the use or for another's use with then contrary to the laws regulating the the issuance of passports or the rules prescribed there under so our reading of the statute judge Baron is that would not be clear if there wasn't the first comma I mean they used it may still be right but if the first comma was missing you'd be definitely right yes I would I would agree with that okay so now if there's an ambiguity because there's two commas in the criminal statute when we normally say that an ambiguous question like this favors the defendant um if I was in a case where a statute is ambiguous certainly the rule of lenity would come into play I don't think that the first comma creates that form of ambiguity it's certainly I'm not aware of any case that has construed the statute in this way on on that point have either of you submitted a 28 J on the Ninth Circuit decision from July the 18th to the end of this case I have not I will I'd be happy to address that um would you mind giving us a page or two supplemental briefing on it to see if you think that case is of any any help on this issue absolutely I would just point out one additional point with respect to the Salinas decision which is that to the extent and and and my friend has not made this argument but to the extent that the defendant made was not material because his daughter was entitled to the passport again that's not how we read the statute but what Salinas makes clear is that there is not a materiality element of section 1542 as opposed to say the regular false statement statute section 1001 I thought there was testimony that the State Department would not have issued that's right I that was belt it was belt suspenders judge should judge Howard we put that in and and I noted in the brief but I certainly I didn't want that to be read as suggesting that that was required and that's why I wanted to direct this court's attention to Salinas on the the preclusion of any evidence regarding the duress and necessity defenses the district court did not air in doing so based on the multiple proffers that were given by the defendant and his counsel I think the district court allowed the that allowed the defendant to supplement his proffer and the story changed as the proffers were supplemented but at the end of the day this is a situation in which the after learning of or after the events occurred according to his account on May 8 2003 went to a neighboring town in the Dominican Republic where he was safe by his own account safe there for three months when he then heard additional facts about the circumstances in his hometown he went to Venezuela where again by his own accounts he remained for another several months I'm not aware of any case that has found a that the immediacy or imminency requirement of the duress or necessity defenses are established in those circumstances to the contrary this court has found that the intervening ability or the sometimes a matter of minutes or days between when a threat occurs can sometimes negate the imminency or immediacy requirements here we're not talking about minutes or days we're talking about months and I direct your court's attention to it's pages 429 to 430 of the appendix where the final supplemental proffer was given all the defendant says about his circumstances while in Venezuela was that he knew that the people who were looking for him had resources and could come after him the district court did not err in finding that that is the precisely the kind of vague threat or vague threat of lingering fear that does not support either defense in addition there is the requirement Chief Judge Howard as you noted that the threat has to require one to violate the literal terms of the law that's what the Supreme Court said in Bailey there's nothing about the threat here that required the defendant to use a false name in applying for a passport to the United States and finally briefly on the on the claim about the other defenses the defense counsel at trial expressly told the district court that he was only requesting the duress or necessity defenses with respect to count one because they would not apply to the other three counts of the indictment based on the lapse in time so in our view that claim is altogether waived if not waived it surely is forfeited and the defendant cannot show plain error in these circumstances thank you thank you